

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2017

**STATE OF TENNESSEE v. ROY ROBINSON**

**Appeal from the Criminal Court for Shelby County**
**No. 13-05184       James C. Beasley, Jr., Judge**
_____

**No. W2016-00263-CCA-R3-CD**
_____

A Shelby County jury found the defendant, Roy Robinson, guilty of aggravated assault and second degree murder. The trial court imposed an effective twenty-year sentence to be served at one hundred percent, and the defendant appealed. On appeal, the defendant challenges the sufficiency of the evidence supporting his second degree murder conviction, arguing he shot his victim in self-defense. The State asserts sufficient evidence exists to support the second degree murder conviction. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

James E. Thomas, Memphis, Tennessee (on appeal), Robert Jones, District Public Defender; Amy Mayne and Michael Johnson, Assistant District Public Defenders (at trial), for the appellant, Roy Robinson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Tracy Jones and Ann Schiller, Assistant District Attorney Generals, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 15, 2013, the defendant shot and killed Gregory Perry at the Pleasant View Apartments in Shelby County, Tennessee. After shooting Mr. Perry, the defendant turned his gun on Antoine Cash and pulled the trigger. The gun, however, failed to fire,

and the defendant fled. The defendant was later charged with the first degree murder of Mr. Perry and the aggravated assault of Mr. Cash.

Prior to the shooting, the defendant arranged a barbeque for the residents of the Pleasant View Apartments. The barbeque was held on apartment property and drew attendees from two street gangs in the area, the Gangster Disciples and the Vice Lords. According to various witnesses, several arguments arose between members of the Gangster Disciples and the Vice Lords during the barbeque, though they were all resolved peacefully prior to the shooting at issue here. Aware of impending violence surrounding the barbeque, the defendant, also known as "Mack Knockout," retrieved a gun from his apartment and concealed it on his person for the remainder of the evening. According to the proof at trial, the defendant was a Gangster Disciple, while Mr. Perry was a Vice Lord.

Kailoni White, a friend of Mr. Perry's and resident of the Pleasant View Apartments, testified that she heard "an altercation on the backside" of the apartments between Mr. Perry and the defendant. Ms. White could see the two men from her kitchen window on the second floor of her apartment building. While looking out the window, she saw Mr. Perry take off his shirt and heard the defendant yelling, "a n***** is gonna learn about me today – they don't call me Knockout for no reason." Believing the defendant and Mr. Perry were going to fight, she walked away from the window. However, instead of fighting, she heard four gunshots. Ms. White left her apartment to help Mr. Perry, who had been shot, and she saw the defendant leave the scene in a car. According to Ms. White, Mr. Perry was unarmed.

Antoine Cash testified consistently, in large part, with Ms. White's testimony. Mr. Cash stated he was walking with Mr. Perry near a dumpster at the Pleasant View Apartments when Mr. Perry asked him for a cigarette, which he did not have. The defendant then stopped them and offered Mr. Perry a cigarette. Mr. Perry denied the defendant's offer, and instead challenged the defendant to "a one on one," or a fight. Mr. Perry took off his shirt, but he did not draw a weapon. As he did so, the defendant pulled a gun on the men, and shot Mr. Perry. After firing four or five times, the defendant pointed the gun at Mr. Cash and pulled the trigger. When the gun failed to fire, the defendant fled the scene in a car. Mr. Cash also confirmed Mr. Perry was unarmed.

Three days after the shooting, police found the defendant hiding in a hotel. Sergeant Gladys Burton of the Memphis Police Department interviewed the defendant, during which the defendant admitted to shooting Mr. Perry. According to the defendant, Mr. Perry challenged him to a "one on one," and then took off his shirt. When Mr. Perry took off his shirt, the defendant believed he was reaching for a gun. As a result, the defendant reached for his own gun, and fired it four to five times at Mr. Perry. He then

fled and threw his gun in the trash in another part of town.  The defendant's gun was not recovered.

According to Sergeant Burton, the defendant told her that Mr. Perry had been causing problems during the barbeque and that he wanted to fight.  Initially, the defendant told Sergeant Burton that Mr. Perry "pistol played" him, or pulled a gun on him.  However, because other witnesses suggested that Mr. Perry did not have a gun at the time of the shooting, Sergeant Burton challenged the defendant's memory of the same.  As a result, the defendant indicated that he thought Mr. Perry reached for a gun prior to the shooting.  Sergeant Burton also testified that prior to taking the defendant's statement, he admitted that he never saw the victim with a gun.

Officer Darrold Hudson responded to the shooting at the Pleasant View Apartments.  When he arrived, he found Mr. Perry unresponsive with "apparent gunshot wounds."  Dr. Erica Curry, an expert in forensic pathology, performed an autopsy of Mr. Perry, noting he died of multiple gunshot wounds to his chest, left arm, and right thigh.  Officer Justin Sheriff documented the scene and identified two spent nine-millimeter casings and four shotgun shells.  Special Agent Kathi Gibson, an expert in latent prints, tested the shotgun shells but was unable to find any identifiable latent prints.  Special Agent Eric Warren, an expert in firearms identification, confirmed the two nine-millimeter cartridge cases had been fired from the same firearm, while the four shotgun shells had not been fired at all.

The defense offered Ladarious Effinger as a witness who corroborated much of the State's case.  Mr. Effinger stated the defendant shot Mr. Perry.  However, he testified that he saw Mr. Perry attempt to pull a shotgun out of his pants prior to the shooting.  Specifically, Mr. Effinger explained that he heard a "loud confrontation" between Mr. Perry, Mr. Cash, and the defendant.  When he looked toward the three men, he saw Mr. Perry take his shirt off and "tr[y] to reach in his pants and pull something out."  According to Mr. Effinger, Mr. Perry was trying to pull out a shotgun.  He stated he could see "[a] red shirt wrapped around . . . the shotgun stock."  As Mr. Perry attempted to pull the shotgun out of his pants, "[t]hat's when [the defendant] turned and fired and shot."  Mr. Effinger stated he had seen the shotgun before because it belonged to the Vice Lords.

The State impeached Mr. Effinger on cross-examination.  First, the State identified that although Mr. Effinger claimed to be good friends with the defendant, he could not find the defendant's apartment on an aerial map of the apartment complex.  Additionally, the State pointed out that Mr. Effinger was smoking marijuana and drinking prior to the shooting, he failed to talk to the police for over two years after the shooting, and he was

facing murder charges of his own.  Finally, Mr. Effinger confirmed he would "do anything" to help the defendant out.

At the close of the proof, the jury convicted the defendant of aggravated assault and the lesser-included offense of second degree murder.  The trial court sentenced the defendant, as a Range I, standard offender, to twenty years to be served at one hundred percent for the second degree murder conviction and imposed a concurrent three-year sentence for the aggravated assault conviction.  This timely appeal followed.

## ANALYSIS

On appeal, the defendant argues the evidence is insufficient to support the jury's finding of second degree murder, arguing instead that the evidence produced at trial showed he acted in self-defense.  The State, in turn, argues the evidence was sufficient.  Upon our review of the record, we agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)).  "A jury conviction removes the presumption of innocence with which a

defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Second degree murder is a result-of-conduct offense. *State v. Page*, 81 S.W.3d 781, 787 (Tenn. Crim. App. 2002). Therefore, a person acts knowingly "when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39–11–302(b) (2014). "[T]he 'nature of the conduct' that causes death is inconsequential." *Page*, 81 S.W.3d at 787. A knowing intent is shown if the defendant acts with an awareness that his conduct is reasonably certain to cause the victim's death. *See id.* at 790-93. Whether a defendant acted "knowingly" is a question of fact for the jury. *State v. Inlow*, 52 S.W.3d 101, 104-105 (Tenn. Crim. App. 2000). In assessing the defendant's intent, the jury may rely on "the character of the assault, the nature of the act and [on] all the circumstances of the case in evidence." *Id.* at 105 (citing *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993)).

In support of his argument, the defendant suggests Mr. Effinger's testimony "indicates that [Mr.] Perry had taken off his shirt and reached into his pants and attempt[ed] to pull out what looked like a shotgun during a heated argument." As such, the defendant claims his response, of shooting the defendant three times, was done in self-defense. We respectfully disagree.

When reviewing the evidence in a light most favorable to the State, the proof presented at trial was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that the defendant committed the second degree murder of Mr. Perry. Mr. Perry challenged the defendant to a "one on one" at the Pleasant View Apartments on June 15, 2013. In preparation for the fight, Mr. Perry took off his shirt. After he did so, the defendant reached for a gun concealed in his pants and shot Mr. Perry in the chest, left arm, and right thigh. The defendant then pointed his gun at Mr. Cash pulled the trigger, and fled the scene. Both Mr. Cash and Ms. White testified that Mr. Perry was unarmed as he approached the defendant for a "one on one," and the police did not find a gun on Mr. Perry during their investigation. Finally, not only did the defendant admit to shooting Mr. Perry, but he also stated he did not see Mr. Perry with a gun prior to the shooting.

The jury determines the credibility of witnesses and the weight afforded to the evidence, and this Court does not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Accordingly, this Court presumes that any conflicts in Mr. Cash's, Ms. White's, and Mr. Effinger's testimonies were resolved by the jury in reaching its verdict. *See Campbell*, 245 S.W.3d at 335; *State v. Adams*, 45 S.W.3d 46, 55 (Tenn. Crim. App. 2000). Further, the trial court properly charged the jury with an instruction on self-defense which, after weighing the evidence presented at trial, the jury clearly rejected in its verdict. As such, we conclude the evidence presented was sufficient to sustain the defendant's conviction, despite Mr. Effinger's testimony. The defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE

- 6 -